CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAY 22 2007

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | | |
|---|---|---|
| **CHAD DOUGLAS MOORE,** | ) | |
| **Plaintiff,** | ) | **Civil Action No. 7:06cv00546** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **OFFICER DAVID O. GREGORY, et al.,** | ) | **By: Hon. Michael F. Urbanski** |
| **Defendants.** | ) | **United States Magistrate Judge** |

## REPORT AND RECOMMENDATION

Plaintiff Chad Douglas Moore ("Moore"), an inmate proceeding pro se, filed this action

pursuant to 42 U.S.C. § 1983, with jurisdiction vested under 28 U.S.C. § 1343. Moore alleges

that while incarcerated at Augusta County Jail ("Jail"), he was subjected to an excessive use of

force, correctional officers failed to protect him from that excessive use of force, his genitals

were exposed to female prison officers, various defendants refused to investigate the alleged

excessive use of force, and he was held in an unsanitary cell for a period of ten hours. By Order

entered November 15, 2006, all dispositive matters in this action were referred to the

undersigned to submit proposed findings of fact and a recommended disposition.

This matter is before the court on defendants' motion for summary judgment. The court

notified Moore of defendants' motion as required by Roseboro v. Garrison, 528. F.3d 309 (4th

Cir. 1975), and advised him that his failure to reply to defendants' motion may result in dismissal

and/or summary judgment being granted for defendants. Shortly thereafter, Moore sent a letter to

the court which the court construed as a motion for discovery. On February 22, 2007, the court

granted Moore's motion and stayed the defendants' motion for summary judgment until the

completion of discovery. The same day, Moore filed a response to the defendants' motion for

summary judgment. Discovery was completed, and on March 20, 2007, the court lifted the stay. Moore was afforded twenty additional days to file any further response to defendants' motion. As the time allotted for Moore to file any additional response has expired, this matter is ripe for disposition.

Upon review of the record, the undersigned finds that there are questions of material fact as to whether Correctional Officer David Gregory utilized an excessive amount of force against Moore on March 3, 2006 and as to whether Correctional Officers Matthew Bosserman and Phillip Cross failed to protect him from that excessive use of force. However, the undersigned finds that there are no issues of material fact as to all of Moore's other claims and that the defendants are entitled to judgment as a matter of law on those claims. Accordingly, it is recommended that the defendants' motion for summary judgment be granted in part and denied in part. Further, the undersigned recommends that all claims against defendants Christy Boyers, Larry Dull, Eric Young, John Craig, and Randy Fisher be dismissed and that they be terminated as defendants in this action.

## I.

Moore alleges that on March 3, 2006, defendant Correctional Officer Gregory used an excessive amount of force against him. Specifically, Moore contends that following the conclusion of an institutional disciplinary hearing, Gregory returned him to his cell and removed his handcuffs without incident. Although unclear, Moore seems to assert that immediately thereafter he advised Gregory that he was going to file a grievance against him related to statements Gregory made during the institutional disciplinary hearing which Moore contended were lies. He also told Gregory that he wanted to speak to defendant Sgt. Boyers regarding

2

Gregory's alleged lies. In response to his statements, Moore claims Gregory told him to put his hands through the cell bars to be recuffed, Moore complied, he was restrained again, and he was removed from the cell. Moore complains that Gregory "jerked" the chain on the cuffs while he led Moore from the cell and "aggressively escorted" him from that wing of the Jail by ramming Moore's shoulder into three different doorframes as they passed through the doors and jerking his handcuffs as they went down the stairs. The abuse continued once Moore arrived in the special management section of the jail where he claims Gregory put him in a "headlock maneuver," pushed him into a cell, put his knee in Moore's back and leg causing him to fall, and slammed his head into the floor. Thereafter, he contends that Gregory ordered defendants Correctional Officers Bosserman and Cross to remove his clothes, which they did, causing him to remain exposed via the institutional video monitoring system for a period of time. A few minutes later Correctional Officer Fridley brought Moore a smock, which Moore claims he put on and wore at all times thereafter.

Moore states that as a result of the assault and the ensuing strip, he was so terrified he immediately urinated and defecated on himself. However, he had no cleaning supplies nor toilet paper, so he was unable to clean himself up. He claims approximately five hours later he was examined by a nurse who documented that he had a knot on his head, abrasions around his wrists, and a bruise on his arm. She gave him an ibuprofen tablet.

Moore asserts the assault caused him immediate, excruciating pain and permanent back, neck, and shoulder damage. He claims that after he was transferred from the Jail, he was seen by various other institutional physicians, he was eventually evaluated by a neurosurgeon at MCV hospital, and he is scheduled for an MRI at UVA to determine the source of his chronic pain. He

3

further contends that he has been prescribed Motrin, Flexeril, Naproxen, and Robaxin as well as prednisone and steroid shots to control his discomfort, but none have alleviated his pain.

As a result of the events on March 3, 2006, Moore raises five claims for relief. First, he alleges Gregory used an excessive amount of force. Second, he claims Bossermen and Cross were deliberately indifferent to the excessive use of force and/or failed to protect him from the excessive use of force. Third, he claims Sheriff Randy Fisher, Captain John Craig, Lt. Eric Young, First Sgt. Larry Dull, and Sgt. Christy Boyers were deliberately indifferent to the use of excessive force because they failed to properly investigate the incident. Fourth, he claims that Gregory, Bosserman, and Cross violated his right to "bodily privacy in front of the opposite gender." Fifth, he claims that Gregory, Bosserman, and Cross caused him to reside in unsanitary conditions for ten hours.

## II.

In support of their motion for summary judgment, defendants attached affidavits addressing Moore's claims as well as portions of Moore's institutional record.

The defendants' affidavits paint a very different version of the events which occurred on March 3, 2006. That morning, following an institutional disciplinary hearing, Moore was returned to his cell by Gregory, Bosserman, and Cross. Because Moore was visibly angry and aggressive - he was yelling, cursing, and threatening to kill various correctional officers and other staff and was throwing items in his cell - and, thus, was likely to be very disruptive to the Augusta County General District Court proceedings which were held in the same building as the Jail, Gregory decided to move Moore from his cell to the Special Management Housing ("SMH") unit, which is farther from the court. However, Moore refused to have his hands cuffed to be

4

transferred. Gregory and Bosserman entered the cell, and Moore threw himself down on his bed. Moore was restrained without further incident, and he was removed from the cell. Thereafter, Moore began to physically resist being moved by struggling against Gregory and refusing to walk. Moore also began yelling "I'm gonna kill my fucking self when I get down there!" When Moore arrived in the SMH unit, he lunged for Bosserman, and Gregory pinned him against the wall.

Because Moore had threatened to harm himself, he was placed on suicide watch, which required him to be stripped of his prison issued clothing and be given a suicide garment which cannot be ripped or torn. Moore was given an order to remove his clothing, but he refused. Thereafter, Bosserman and Gregory attempted to remove Moore's clothes, but he continued to resist and a "soft empty hand take down maneuver" was used to control him. Once his clothing was removed, Gregory and Bosserman exited the cell, and Moore was given a suicide garment, which he initially refused to put on. Over some period of time, Moore alternated between wearing the garment, taking the garment off, and using the garment to cover the cell bars. Def.'s Mot. Summ. J., Ex. B, Gregory Aff.; Def.'s Mot. Summ. J., Ex. D, Bosserman Aff.

Defendants concede that between the time Moore's institutional clothing was removed and when he was provided with the suicide garment, he was left unclothed for a few minutes and that there is a video monitoring system which transmitted an image of Moore in a state of undress to the Jail's control room. However, they contend the video stream can only be seen by correctional employees assigned to the control room and that no other correctional employees are allowed to view these images. Defendants also assert that the only female officer in the control room on the date and time of the incident was Christy Boyers, who has an assigned desk and

5

duties in the control room, and she cannot recall if she actually saw Moore. Finally, defendants assert that video feed from eighteen various locations throughout the Jail plays simultaneously as reduced size images on two large screens in the control room and the video feed is not constantly monitored; therefore, any exposure to female employees would have been minimal. Def.'s Mot. Summ. J., Ex. G, Boyers Aff; Def.'s Mot. Summ. J., Ex. H, Fridley Aff.

The cell Moore was placed in did not have a toilet; however, Moore was offered the opportunity to use the restroom on several occasions, which he actually did twice and refused on the other occasions. While housed in the SMH unit Moore continued to behave inappropriately and in a violent and disruptive manner by urinating through and onto the cell bars and the guards' call button, located outside of his cell; spitting onto the guards' call button; blowing nasal discharge at the bars of his cell and onto the guards' call button; and urinating and defecating onto the paper plate on which his lunch was served and shoving the plate through the bars of the cell. Moore was also observed aggressively rubbing his head on the bars of the cell. Throughout this ordeal Moore repeatedly threatened to sue the correctional officers. Def.'s Mot. Summ. J., Ex. B, Gregory Aff.; Def.'s Mot. Summ. J., Ex. D, Bosserman Aff.

Moore's institutional record establishes that on February 13, 2006, Moore was placed in maximum security administrative segregation due to repeatedly making threats to harm correctional employees. Def.'s Mot. Summ. J., Ex. B, Gregory Aff., Ex. 1.

The institutional log establishes that on March 3, 2006 at 9:17 a.m., Moore was removed from his cell and transferred to the SMH unit. At 10:28 a.m. the courtroom bailiff called the unit in which Moore was housed and complained of excessive noise, and as of 11:26 a.m. Moore continued to yell and be disruptive. The log also establishes that at 12:46 p.m. Moore was taken

6

from the SMH cell to use the restroom, but refused to have his cell cleaned. Def.'s Mot. Summ. J., Ex. B, Gregory Aff., Ex. 3.

Inmates in the SMH unit are checked on every fifteen minutes and their activities are recorded. The March 3, 2006 SMH log regarding Moore establishes that by 9:19 a.m. Moore had been transferred from his usual cell to the SMH unit and was talking with the deputies. Moore was held in the SMH unit until approximately 7:00 p.m. The logs reveal that during that time he exited his cell twice to use the restroom, at 10:00 a.m. and 12:46 p.m.; he went to the medical office at 2:00 p.m.; and he spent the remainder of the time walking around in his cell, lounging in his cell, and/or sleeping. Def.'s Mot. Summ. J., Ex. B, Gregory Aff., Ex. 2.

Moore's medical records reveal that he was examined by the institutional medical staff on March 3, 2006, at 1:55 p.m. At that time, staff noted Moore complained of dizziness and that his head hurt. Moore suffered only a small bump on his forehead, some bruising on his left arm, and some mild, scratch-like abrasions on both wrists. Moore was given ibuprofen. The following day he was rechecked by medical staff. During his visit Moore informed the nurse that "the only real thing bothering him is his head hurts." The nurse's notes also indicate that Moore was observed talking, laughing, and joking with other inmates. He was seen again on March 7, 2006. At that time the institutional physician noted no swelling or discoloration, but did note some tenderness in Moore's left shoulder and trapezium, and he prescribed Flexeril[1] for one week and ibuprofen as needed. Moore was seen a week later, complaining of pain in his left shoulder. He

---

[1]Flexeril is a muscle relaxant which blocks nerve impulses sent to the brain. http://www.drugs.com/flexeril.html.

7

was diagnosed with bursitis, and he was prescribed Robaxin[2] and Naproxen[3] for three weeks and ibuprofen as needed. On March 27, 2006, Moore was examined again following complaints of "excruciating pain in [his] neck and shoulder" upon waking, but which decreased during the day. On exam the institutional physician found that Moore had an exaggerated response to light palpation, and he noted that Moore seemed to be more interested in the legal aspects of his visit than the medical aspects. Despite this, the physician recommended x-rays of Moore's cervical spine and shoulder. Moore was reexamined three days later. During that visit, the institutional physician noted that Moore seemed to be in no apparent pain when observed walking and moving and he had a full range of movement in his left shoulder, but he tensed on exam. The institutional physician concluded that the objective evidence of any injury had decreased, but Moore's subjective complaints of pain had increased. Moore was seen once more by the same physician on April 3, 2006. That day the physician recorded that Moore was argumentative and threatening, he appeared to be in no actual pain, and he refused to have any x-rays. Citing the lack of objective findings as well as Moore's repeated threats of legal action, the physician noted that he suspected that Moore's complaints of pain were motivated by secondary gain and that he was not suffering from an actual injury. Def.'s Mot. Summ. J., Ex. C, Riley Aff., Ex. 2.

## III.

Moore does not challenge the validity of the institutional logs or his medical records. However, Moore attached additional medical records to his response to the defendants' motion

---

[2]Robaxin is a muscle relaxant which blocks nerve impulses sent to the brain. http://www.drugs.com/mtm/robaxin.html.

[3]Naproxen is a nonsteroidal anti-inflammatory. http://www.drugs.com/naproxen.html.

8

for summary judgment. Moore asserts those records establish that he suffered a significant injury as a result of the March 3, 2006 confrontation and that he continues to suffer from unrelenting pain as a result of his injury.

Moore was transferred from the Augusta County Jail to the Middle River Regional Jail in the beginning of April 2006. On April 7, 2006, Moore was transferred from the Middle River Regional Jail to the Powhatan Receiving and Classification Center. Moore's medical transfer sheet from the Middle River Regional Jail notes that he was receiving treatment for continuing neck and back pain following an injury in March 2006. Moore was examined by the institutional physician on April 24, 2006, after voicing complaints of back pain and tingling in his arm and back. The physician noted that Moore had a full range of motion, but nonetheless ordered an x-ray of his cervical spine. The results were normal. Moore was seen again on May 16, 2006, now complaining of left shoulder pain and tingling in his left hand. He was seen by the institutional physician on May 19, 2000, who noted that Moore had a full range of motion in his neck and left shoulder without pain on palpation and movement, but had decreased sensation in his left arm and hand and slight weakness of grip in his left hand. The physician ordered an x-ray of Moore's shoulder and a nerve conduction study. The x-ray was negative. The nerve conduction study showed mild ulnar neuropathy[4] at the left elbow and evidence of a C3 or C4 radiculopathy[5]. An MRI was subsequently ordered, but those results were not included with Moore's medical record. Nonetheless, the record indicates that Moore continues to complain of neck and shoulder pain, he

---

[4]Neuropathy is a functional disturbance or pathological change in the peripheral nervous system. Dorland's Illustrated Medical Dictionary 1257 (30th ed. 2003).

[5]Radiculopathy is a disease of the nerve roots, which if evident in the cervical spine manifests as shoulder or neck pain. Dorland's Illustrated Medical Dictionary 1562 (30th ed. 2003).

9

has been prescribed Vicodin[6] to control his pain, and the institutional physicians attribute his pain to mild neuropathy.

Moore also produced three affidavits from inmates stating that Moore was not the aggressor in the March 3, 2006 incident and that they saw Gregory push Moore into one doorframe. However, none of these affidavits offer any evidence as to what happened inside Moore's cell or what happened once he left his cell for the SMH unit.

Moore also produced evidence that he was subsequently charged and convicted on institutional disciplinary charges for threatening several correctional officers with bodily harm for the statements he made on March 3, 2006. Those records reveal three correctional officers testified they heard Moore cursing at correctional officers and threatening to kill any correctional employee he saw on the street. Moore was convicted and received a fifteen day loss of privileges.

### III.

Upon motion for summary judgment, the court must view the facts and the inferences to be drawn from those facts in the light most favorable to the party opposing the motion. Ross v. Communications Satellite Corp., 759 F.2d 355 (4th Cir. 1985). However, the court need not treat the complainant's legal conclusions as true. See, e.g., Custer v. Sweeney, 89 F.3d 1156, 1163 (4th Cir. 1996) (court need not accept plaintiff's "unwarranted deductions," "footless conclusions of law," or "sweeping legal conclusions cast in the form of factual allegations") (internal quotations and citations omitted); Estate Constr. Co. v. Miller & Smith Holding Co., 14 F.3d

---

[6]Vicodin is a narcotic pain reliever used to relieve moderate to severe pain. http://www.drugs.com/vicodin.html

213, 217-18 (4th Cir. 1994). Summary judgment is proper where there is no genuine issue as to

any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P.

56(c). However, "[t]he mere existence of some alleged factual dispute between the parties will

not defeat an otherwise properly supported motion for summary judgment; the requirement is

that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

247-48 (1986).

### A.    Excessive Force

First, Moore claims that Gregory used an excessive amount of force against him on

March 3, 2006. To establish an Eighth Amendment excessive force claim against a prison

official, an inmate must satisfy a two-pronged standard comprised of both a subjective inquiry

(whether the defendant acted with a sufficiently culpable state of mind) and an objective inquiry

(whether the harm plaintiff suffered was sufficiently serious enough to amount to a constitutional

violation). Williams v. Benjamin, 77 F.3d 756, 761 (1996).

The subjective component of an excessive force claim requires an inmate to demonstrate

that the force used by an institutional official "inflicted unnecessary and wanton pain and

suffering." Hudson v. McMillian, 503 U.S. 1, 7 (1992). In evaluating such a claim, "the question

whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns

on 'whether force was applied in a good faith effort to maintain or restore discipline or

maliciously and sadistically for the very purpose of causing harm.'" Id. (quoting Whitley v.

Albers, 475 U.S. 312, 32-21 (1986)). In determining whether a prison official acted maliciously

and sadistically the court should consider: (1) the need for application of force; (2) the relationship

between that need and the amount of force used; (3) the threat reasonably perceived by the

11

responsible officials; and (4) any efforts made to temper the severity of a forceful response.
Hudson, 503 U.S. at 7 (1992); Williams, 77 F.3d at 762.

Also, the inmate must prove the corrections official's actions were "'objectively harmful enough' to offend 'contemporary standards of decency.'" Stanley v. Hejirika, 134 F.2d 629, 634 (4th Cir. 1998) (quoting Hudson, 503 U.S. at 8). Although there is no requirement that an inmate suffer "serious" or "significant" pain or injury to demonstrate that a malicious or sadistic use of force was employed, he must allege "more than a de minimis pain or injury." Norman v. Taylor, 25 F.3d 1259, 1263 n. 4 (4th Cir. 1994). "[A]bsent the most extraordinary circumstances, a plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injury is de minimis." Taylor v. McDuffie, 155 F.3d 479, 483 (4th Cir. 1998). However, a de minimis physical injury may amount to an Eighth Amendment violation if the force used was of the sort "repugnant to the conscience of mankind." In Norman v. Taylor, the Fourth Circuit stated:

> We recognize that there may be highly unusual circumstances in which a particular application of force will cause relatively little, or perhaps no, enduring injury, but nonetheless will result in an impermissible infliction of pain. In these circumstances, we believe that either the force used will be "of a sort 'repugnant to the conscience of mankind,'" and thus expressly outside the de minimis force exception, or the pain itself will be such that it can properly be said to constitute more than de minimis injury.

25 F.3d at 1263, n. 4 (citations omitted).

Moore alleges that on March 3, 2006, Gregory jerked his handcuffs, purposefully rammed him into three doorframes while transporting him to the SHM unit, put him in a headlock, kneed him in the back and legs, and slammed his head into the floor. As a result of these actions Moore claims to have suffered immediate excruciating pain and a permanent neck/back/shoulder injury. Moore's medical records from the jail establish that immediately after the incident he had

12

minimal signs of any injury; however, about one week later he began complaining of shoulder and arm pain. Thereafter, he continued to complain of persistent back, neck, and shoulder pain, and he was subsequently diagnosed with ulnar neuropathy at the left elbow and C3 or C4 radiculopathy. The medical records establish that Moore has medical symptoms and diagnosed illnesses which are more than de minimis. However, the undersigned finds there is a question of fact as to whether Moore's symptoms and diagnosed illnesses are attributable to the alleged confrontation on March 3, 2006.

There is also a question of fact as to whether Gregory used an excessive amount of force on March 3, 2006. Moore asserts he remained passive and compliant throughout the encounter and without cause Gregory shoved, jerked, and pushed him; put him in a headlock; and slammed his head into the floor. Gregory counters that Moore refused to comply with orders to submit to restraints, threatened Gregory and other correctional officers with physical harm both before and after he was restrained, physically resisted being transferred from one cell to another after he was restrained, lunged at another correctional officer, and once transferred to another cell he still refused to comply with orders. Gregory further contends that the amount of force used against Moore was the minimal amount necessary to regain and maintain control over Moore. If the court credits Moore's version of the events, Gregory acted maliciously and sadistically for the purpose of causing him harm. However, if the court credits Gregory's version of events, Moore was acting in a violent and disruptive manner which necessitated the use of force.

Given this, the undersigned concludes that there is a genuine issue of material fact as to whether or not Moore was subjected to an excessive use of force on March 3, 2006. Therefore,

13

the undersigned recommends that Gregory's motion for summary judgment on this claim be denied.

### B. Failure to Protect

Second, Moore claims Bossermen and Cross were deliberately indifferent to the excessive use of force and/or failed to protect him from an excessive use of force by Gregory on March 3, 2006.

The Eighth Amendment requires prison officials to take reasonable precautions to protect the safety of inmates. Farmer v. Brennan, 511 U.S. 825, 832-833 (1994). To prevail on a failure to protect claim, an inmate must show that he was subjected to conditions that posed a substantial risk of serious harm and that prison officials were aware of and disregarded that risk. Id. at 834-837. Moore asserts that Bossermen and Cross were present throughout the entire encounter between himself and Gregory, yet did not intervene and, in fact, were amused by the assault. As noted above, there is a material question of fact as to whether Moore suffered any significant harm as a result of the confrontation on March 3, 2006. Further, there is also a material question of fact as to whether the amount of force used to subdue and maintain control over Moore was excessive under the circumstances. Accordingly, the undersigned concludes that there is a genuine issue of material fact as to whether Bosserman and Cross knew of and disregarded an excessive risk to Moore's safety as relates to the confrontation on March 3, 2006. See id. Accordingly, the undersigned recommends that defendants Bosserman and Cross' motion for summary judgment on this claim be denied.

14

## C.  Failure to Investigate

Third, Moore claims Sheriff Randy Fisher, Captain John Craig, Lt. Eric Young, First Sgt. Larry Dull, and Sgt. Christy Boyers were deliberately indifferent to Gregory's excessive use of force because they failed to properly investigate the incident.  As a threshold matter, because a jail's institutional grievance procedure does not confer any substantive right upon prison inmates, a prison employee's failure to comply with the grievance procedure by promptly and/or properly investigating any alleged misconduct is not actionable under § 1983.  Adams v. Rice, 40 F.2d 72 (4th Cir. 1994).

Further, Moore has not made any specific allegations against Lt. Eric Young, First Sgt. Larry Dull, and Sgt. Christy Boyers as to their part in the investigative process.  He has not alleged any of these defendants witnessed the events on March 3, 2006 nor that he even informed them of his version of the events occurring on March 3, 2006.  As to Sheriff Randy Fisher and Captain John Craig, Moore alleges only that he wrote them a letter informing them that he had been mistreated on March 3, 2006, but he did not receive any response from those officers.  However, Moore concedes that there was a formal investigation into his complaints of misconduct related to the March 3, 2006 incident, and his complaints were deemed unfounded.  Moore does not allege any specific deficiencies in the investigation nor what further actions he believes Sheriff Fisher and Captain Craig should have taken in response to his complaints.  As it is clear that there was an investigation into Moore's complaints and as prisoner's have no constitutional right to complain about the promptness and/or thoroughness of an institutional investigation, the undersigned recommends that defendants' motion for summary judgment on this issue be granted.

15

To the extent Moore asserts these defendants are liable under a theory of supervisory liability, it is without merit. Supervisory officials may be held liable for the actions of their subordinates only if the plaintiff can show: (1) that the supervisor had actual or constructive knowledge that subordinates were engaged in conduct that posed "a pervasive and high risk" of constitutional injury; (2) the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices;" and (3) there was an "affirmative causal link" between the supervisor's inaction and the actual constitutional injury suffered by the plaintiff. Randall v. Prince George's County, Md., 302 F.3d 188, 206 (4th Cir. 2002) (quoting Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994)); Slakan v. Porter, 737 F.2d 368 (4th Cir. 1984). Moore has not alleged any facts which suggest any of these officers were aware of Gregory's alleged misconduct prior to the alleged violation. Moore does not assert that prior to the incident on March 3, 2006 he had ever been the victim of excessive force nor that he had filed any complaints against Gregory for any alleged incidents of excessive force or misconduct. Nor does Moore assert Gregory acted to effectuate any policy implemented or condoned by any of these defendants. As Moore cannot demonstrate that any of these defendants had actual or constructive knowledge of any violations of Moore's constitutional rights before the alleged incident or that they instituted a policy likely to result in the constitutional harm alleged, the undersigned recommends that the defendants' motion for summary judgment on this claim be granted. See Davis v. Lester, 156 F.Supp.2d 588, 597 (W.D. Va. 2001) (finding that supervisory officials cannot be held liable for subordinates' conduct when they did not have specific notice of any risk of harm to that particular inmate prior to the alleged

16

violation and they had not effectuated or condoned any policy likely to result in the harm alleged).

### D. Bodily Privacy

Fourth, Moore claims that Gregory, Bosserman, and Cross violated his right to "bodily privacy in front of the opposite gender" by causing him to remove his clothing and leaving him exposed, via the video monitoring system, for a few minutes. Moore does not allege that during the time he remained naked any female correctional employees actually saw him 'in the flesh.' Rather, he contends that he heard Bosserman and Cross laughing that various female employees "were laughing and joking" about his situation. He further contends that because defendant Christy Boyers was present in the control room where video feed from the cell was played, she had "access [to] watch[] male's [sic] genitalia."

Defendants do not deny that Moore was caused to remain naked for a brief period of time after his clothing was removed and before the suicide garment was provided. However, they contend that no female employees actually saw Moore naked. Defendants further assert that even if female employees had seen him naked, it does not amount to a constitutional violation because (1) Moore's threats of self-harm necessitated the removal of his Jail outfit and the provision of a suicide garment which cannot be ripped or torn and (2) the Jail has an inherent interest in maintaining institutional security and safety which requires correctional officers to continue to monitor inmates even when they are in a state of undress.

Although inmates retain some right to privacy under the Constitution, including the right not to be viewed naked by a member of the opposite sex when not reasonably necessary, merely being seen naked by a member of the opposite sex does not amount to a constitutional violation.

17

See Lee v. Downs, 641 F.2d 1117, 1120 (4th Cir. 1981). Crossgender supervision passes

constitutional muster if it is reasonably related to a legitimate penological interest. See Turner v.

Safley, 482 U.S. 78, 89-91 (1987). Prison officials clearly have an overriding security interest

and responsibility in maintaining safety and order in the institution, and this may necessarily

entail using video surveillance to monitor inmates even during those times when they are

unclothed. MacDonald v. Angelone, 69 F.Supp.2d 787, 793 (E.D. Va. Sept. 2, 1999). There are

also clear equal opportunity employment hiring concerns which prohibit prisons from denying

employment to females or limiting female employees to only those positions where there is no

possibility they will see male inmates in a state of undress. Riddick v. Sutton, 794 F.Supp. 169,

171-72 (E.D. NC May 8, 1992). Accordingly, when a male inmate's genitals are exposed to a

female correctional employee on only one occasion or on a limited basis, there is no

constitutional violation. See Timm v. Gunter, 917 F.2d 1093, 1101-02 (8th Cir. 1990) (finding

that minimal intrusions on privacy are outweighed by institutional concerns for safety and equal

employment opportunity), cert. denied, 501 U.S. 1209 (1991); Michenfelder v. Sumner, 860 F.2d

328, 333-34 (9th Cir. 1988) (holding an infrequent or casual observation of a naked inmate does

not warrant court interference); Grummett v. Rushen, 779 F.2d 491, 496 (9th Cir. 1985) (stating

that inmates' privacy needs are outweighed by internal security needs and equal employment

opportunities).

  Here, although Moore asserts that he was not suicidal and, thus, there was no need to

remove his clothing and provide him with a suicide garment, he concedes that on several

occasions prior to this incident he was very angry and depressed and had threatened to harm

himself and others. Further, Moore does not contest that at the time his clothing was removed

correctional officers believed he was suicidal. Moore concedes that he was only unclothed for a very brief period and he was not physically observed by any females. The evidence establishes that, at most, on one instance, for a very brief period Moore's unclothed body was exposed via a video monitoring system, which simultaneously played images of seventeen additional locations throughout the Jail, in the control room where only one female guard was assigned and who had duties other than monitoring the video feed. The undersigned find that this exposure amounts to a minimal intrusion into Moore's privacy and, therefore, was not unconstitutional. See Hickman v. Jackson, 2005 WL 1862425, 2:03cv363, * 8-10 (E.D. Va. Aug.3, 2005) (holding that infrequent or non-routine exposure of male inmates in a state of undress to female guards in the course of their performance of their professional duties does not outweigh the institutional concerns of security and equal opportunity employment and, thus, does not amount to a constitutional violation). Accordingly, the undersigned recommends that defendants' motion for summary judgment on this issue be granted.

### E. Living Conditions

Fifth, Moore claims that Gregory, Bosserman, and Cross caused him to reside in unsanitary conditions for ten hours. Specifically, Moore complains that immediately after he was placed in the SMH cell he urinated and defecated on himself, but thereafter was not given any cleaning supplies to clean his person and/or his cell and he was forced to go without restroom breaks.

While the Eighth Amendment does protect prisoners from cruel and unusual living conditions, an inmate is not entitled to relief simply because of exposure to uncomfortable, restrictive, or inconvenient conditions of confinement, for, "[t]o the extent that such conditions

are restrictive or even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). As a result, in order to state a claim of constitutional significance regarding prison conditions, a plaintiff must demonstrate not only that the living conditions violated contemporary standards of decency, but also that prison officials acted with deliberate indifference to such conditions. Wilson v. Seiter, 501 U.S. 294 (1991). Moreover, a plaintiff must allege facts sufficient to show either that he has sustained a serious or significant mental or physical injury as a result of the challenged conditions or that the conditions have created an unreasonable risk of serious damage to his future health. Strickler v. Waters, 989 F.2d 1375, 1380-1381 (4th Cir. 1993); Helling v. McKinney, 509 U.S. 25 (1993).

Despite Moore's complaints, the evidence establishes that he was placed in the SMH cell at 9:19 a.m., he was first afforded a bathroom break at 10:00 a.m., a second bathroom break at 12:46 p.m., and during both breaks Moore left his cell and used the restroom. Also, Moore was examined by institutional medical staff at 2:00 p.m. There are no notations in Moore's medical record that he had urinated or defecated on himself, that he complained to medical staff that he had soiled himself, or that he complained he needed to use the restroom but correctional employees refused to allow him to use the facilities. Moore was released to his regular cell at or about 7:00 p.m., after he reported to correctional employees he was no longer suicidal and after he signed an agreement not to harm himself.

Moore does not assert that he suffered any actual injury as a result of the allegedly unsanitary conditions in his cell. To the extent he asserts concern of developing some disease in the future related to his alleged brief exposure to his own waste, it insufficient to state a claim on

20

which relief can be granted. <u>Snipes v. DeTella</u>, 95 F.3d 586, 592 (7th Cir. 1996) (finding that fear and emotional distress suffered from contemplating the risk of contracting AIDS or any other communicable disease fails to state an Eighth Amendment claim); <u>Lee v. Tillman</u>, 2006 WL 2715127, 04-0823-WS-C, at *4 (S.D. Ala. Sept. 22, 2006) (stating that mere allegations of exposure to AIDS, tuberculosis, hepatitis, and staphylococcus bacteria absent actual, subsequent illness fail to state a constitutional claim); <u>see also</u> <u>Canell v. Multnomah County</u>, 141 F.Supp. 2d 1046, 1053 (D.Or. 2001). Accordingly, the undersigned finds that Moore fails to state a claim of constitutional magnitude and, therefore, recommends that defendants' motion for summary judgment on this issue be granted.

## IV.

For the reasons stated above, the undersigned finds that there are issues of material fact as to whether Gregory utilized an excessive amount of force against Moore on March 3, 2006 and as to whether defendants Bosserman and Cross failed to protect him from that excessive use of force. However, the undersigned finds that Moore has failed to present any question of material fact as to all remaining claims and that the defendants are entitled to judgment as a matter of law on those claims. Accordingly, it is recommended that the defendants' motion for summary judgment be granted in part and denied in part and that this matter be set down for trial on the issues of (1) whether David Gregory utilized an excessive amount of force on March 3, 2006 against Moore and (2) whether Matthew Bosserman and Phillip Cross failed to protect Moore from the alleged excessive use of force by David Gregory on March 3, 2006. Further, the undersigned recommends that all claims against defendants Christy Boyers, Larry Dull, Eric

21

Young, John Craig, and Randy Fisher be dismissed and they be terminated as defendants in this action.

The Clerk is directed to immediately transmit the record in this case to the Honorable Samuel G. Wilson, United States District Judge. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note objections, if they have any, to this Report and Recommendation within ten (10) days hereof. Any adjudication of fact or conclusions of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by the reviewing court as a waiver of such objection.

Further, the Clerk is directed to send a certified copy of this Report and Recommendation to Scales and all counsel of record.

Enter this 22nd day of May, 2007.

Michael F. Urbanski
United States Magistrate Judge

22